**IT IS ORDERED as set forth below:**

**Date: April 25, 2025**

_____

**Jeffery W. Cavender
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 20-68856-JWC |
| AP FRAMING, INC., | CHAPTER 11 |
| Debtor. | |

## ORDER

The Bankruptcy Code designs a sequence of protections to prevent creditors from commencing or continuing litigation against a debtor. Initially, the automatic stay under 11 U.S.C. § 362(a)(1) prevents "the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement" of the case. If a debtor receives a discharge, the automatic stay gives way to 11 U.S.C. § 524(a)(2), which "operates as an injunction against the commencement or continuation of an action,

1

the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." Where, as in this case, a debtor under subchapter V of chapter 11 confirms a non-consensual plan under 11 U.S.C. § 1191(b), such debtor is protected from the commencement or continuation of litigation by whatever language is included in the plan that protects the debtor until payments under the plan are completed and a discharge is received. In this case that provision is a plan injunction. Unlike §§ 362 and 524, however, no provision in the Bankruptcy Code governs the appropriate breadth of a plan injunction or how to modify it. The Court is confronted by this statutory negative space and must determine whether it is proper to reopen the Debtor's case to allow a creditor to proceed in a state court suit nominally against the Debtor for purposes of pursuing the Debtor's insurers. Secondarily, if reopening is appropriate, the Court must assess whether it is necessary, and if necessary, how, to modify the plan injunction to allow the litigation to proceed.

For the reasons explained below, the Court finds it appropriate to reopen the bankruptcy case to prevent prejudice to a creditor seeking to pursue litigation nominally against the Debtor given that neither the Debtor nor other creditors will be prejudiced. Despite some question as to the necessity of modification, the Court also finds that modification is appropriate as the Debtor is a necessary party to the litigation, the Court lacks evidence indicating the Debtor will bear material litigation expenses, and, in any event, the creditor seeking relief to collect against insurance

2

cannot collect against the Debtor personally or from its assets.

**Background**

This matter is before the Court on Balfour Beatty Construction, LLC's ("Balfour Beatty") Motion to Reopen and Lift Stay (Doc. No. 206) (the "Motion to Reopen"). Balfour Betty seeks the reopening of the bankruptcy case of AP Framing, Inc. (the "Debtor") and modification of the Debtor's chapter 11 subchapter V plan injunction to continue litigation in Tennessee state court. The Debtor filed a Response in Opposition (Doc. No. 209) (the "Response"), and the Court held a hearing on the Motion to Reopen on February 20, 2025, at which counsel for the Debtor, counsel for Balfour Beatty, and the now-terminated subchapter V trustee appeared. The Court took this matter under advisement at the hearing's conclusion.

The Debtor commenced this case under subchapter V of chapter 11 on August 10, 2020. The Debtor filed its first Chapter 11 Small Business Subchapter V Plan on November 6, 2020 (Doc. No. 73), a First Amended Plan on December 4, 2020 (Doc. No. 83), and a Second Amended Plan on January 5, 2021 (Doc. No. 114) (the "Plan"). Prior to confirmation of the Plan, Balfour Beatty filed a Motion to Deem Late-Filed Proof of Claim Timely (Doc. No. 123) stating it had not received notice of the Debtor's bankruptcy case and seeking relief from the Court to allow a late-filed proof of claim. The Court granted Balfour Beatty's motion and deemed its late-filed and unliquidated claim timely by order entered on January 27, 2021 (Doc. No. 131). The Plan was confirmed by an order entered on February 10, 2021 (Doc. No. 142) (the

3

"Confirmation Order"). Because the Debtor confirmed a non-consensual plan under 11 U.S.C. § 1191(b), the Debtor is not entitled to a discharge until payments are completed under the Plan. Pending completion of Plan payments, however, the Plan includes an injunction preventing the continuation or commencement of actions against the Debtor during the term of the Plan.

On March 26, 2022, after confirmation of the Debtor's Plan, Balfour Beatty filed a motion requesting relief from the automatic stay to seek recovery from the Debtor's insurance (Doc. No. 192). Five days later, a consent order was entered modifying the stay to permit Balfour Beatty "to continue with the ongoing Civil Litigation for purposes of liquidating damages, to collect against Debtor's insurance carrier only to the extent of available insurance and not against Debtor." (Doc. No. 193) (the "Consent Order").[1] A little over one month after entry of the Consent Order, the Debtor's bankruptcy case was closed. The Debtor's Plan provides for yearly payments to unsecured creditors over a five-year period, and payments under the Plan are almost complete. One final installment is due in April of 2026. (*See* Doc. No. 73, p. 16; Doc. No. 209, ¶ 32).

Balfour Beatty as the holder of an unliquidated claim has received no distributions under the Debtor's Plan, the Plan makes no provision for reserves for unliquidated claims, and Balfour Beatty is not seeking to liquidate its claims for

---

[1] The motion and related Consent Order requested and authorized relief from the automatic stay but are more appropriately viewed as seeking and obtaining a consensual modification of the Plan injunction to allow the litigation to continue.

4

purposes of obtaining a distribution under the Debtor's Plan. Instead, Balfour Beatty seeks to reopen this bankruptcy case to continue pursuing litigation nominally against the Debtor to collect from the Debtor's insurance. Balfour Beatty's claim arises from an indemnification agreement related to the construction of the Demonbreun Apartments in Charlotte, North Carolina (Doc. No. 206). The Consent Order permitted Balfour Beatty to continue one action in the Superior Court of Fulton County, Georgia, Case No 20-CVS-016165, and three different actions "to pursue any available insurance only" in the Superior Court of North Carolina, Mecklenburg County: (1) Case No. 20-CVS-010180; (2) Case No. 2020-CV-341255; and (3) and Case No. 20-CVS-1272 (Doc. No. 193). Sometime in 2022, Case No. 20-CVS-1272 (the "Demonbreun Case") was dismissed for improper venue (Doc. No. 206, ¶ 10). Balfour Beatty then filed a complaint in the Circuit Court of Davidson County, Tennessee against the Debtor commencing Case Number 22C2081 (Doc. No. 209, Ex. A), raising substantially the same claims asserted in the Demonbreun Case.[2] Additionally, in 2023, Balfour Beatty filed an answer and third-party complaint, including claims against the Debtor related to the Demonbreun project, in Case Number 20C2292 in the Sixth Circuit Court of Davidson County, Tennessee (Doc. No. 209, Ex. B).

The litigation in Tennessee proceeded between Balfour Beatty and the Debtor largely without regard to the Plan injunction. Recently, however, issues with respect

---

[2] Balfour Beatty entered a voluntary nonsuit in Case Number 22C2081 on October 24, 2023 (Doc. No. 209, ¶ 17 n.1).

5

to the Debtor's Plan were raised, and some or all the litigation in Tennessee has been stayed pending further direction from this Court. Because the Consent Order specifically allowed Balfour Beatty to proceed with the Demonbreun Case in North Carolina, without any mention of Tennessee, Balfour Beatty seeks to reopen the Debtor's case and obtain relief from the Plan injunction to continue the litigation in Tennessee to recover against any applicable insurance.

**Relief Sought**

Balfour Beatty seeks relief pursuant to 11 U.S.C. § 350 and Federal Rule of Bankruptcy Procedure 5010.[3] Section 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Similarly, Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Balfour Beatty argues that the Court has "broad discretion in the reopening of a case." (Doc. No. 206, ¶ 17).[4] Despite such "broad discretion," Balfour Beatty recognizes that "[c]ourts will decline to reopen a case when reopening cannot accomplish the goal sought by the moving party." (Doc. No. 206, ¶ 18).[5] Here, Balfour Beatty asserts that its goal of continuing litigation nominally against the Debtor to obtain recovery against any applicable insurance can be accomplished through

---

[3] The Federal Rules of Bankruptcy Procedure are hereinafter referred to as the "Bankruptcy Rules."

[4] In support of its position, the Debtor cites 3 COLLIER ON BANKRUPTCY ¶ 350.03, 350-06 (16th ed. 2011); then *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538 (8th Cir. 2005); and then *In re Shondel*, 950 F.2d 1301 (7th Cir. 1991).

[5] 3 COLLIER ON BANKRUPTCY ¶ 350.03[05], 350-13 (16th ed. 2011).

reopening the case and modifying the Plan injunction.

The Debtor in its Response and at the February 20 hearing argued the Motion to Reopen should be denied for at least three reasons: (1) "Balfour Beatty indisputably had knowledge of this case when it sued AP Framing in the Tennessee Court but failed to obtain relief from the stay and confirmation injunction to do so;" (2) "it is now nearly four years since the plan of reorganization was confirmed, such that fixing an amount for Balfour Beatty's claim will be of no use to the parties;" and (3) the Debtor argues "there may well be no insurance policy against which Balfour Beatty could seek payment." (Doc. No. 209). The Court addresses the parties' respective arguments below.

<u>Analysis</u>

### 1. Reopening Bankruptcy Case

Section 350(b) provides a broad avenue through which a bankruptcy court may provide relief, and "a decision in this respect thus necessarily falls within the 'sound discretion of a bankruptcy court.'"[6] Bankruptcy courts exercise this discretion "based upon the peculiar facts present and determine if cause exists and how ultimately to dispose of the case."[7] When considering reopening a case to determine whether collateral litigation may proceed, bankruptcy courts generally consider three factors: (1) "the benefit to the debtor;" (2) "the prejudice or detriment to the defendant in the

---

[6] *In re Ohai*, Case No. 12-65475-WLH, 2023 WL 4551481, at *2 (Bankr. N.D. Ga. July 14, 2023) (Hagenau, J.) (quoting *In re Tarrer*, 273 B.R. 724, 731-32 (Bankr. N.D. Ga. 2001) (Drake, J.)).

[7] *Id.* (quoting *In re Koch*, 229 B.R. 78, 88 (Bankr. E.D.N.Y. 1999)).

7

pending litigation;" and (3) "the benefit to the debtor's creditors."[8] Courts also routinely analyze the futility of the requested relief: a "[c]ourt will not reopen [a] case if doing so would be futile[.]"[9]

Analyzing these factors, the Court concludes that reopening is appropriate notwithstanding the fact that doing so provides no benefit to the Debtor. A creditor's pursuit of a debtor's insurer does nothing to improve a debtor's fortunes. The Court, however, finds that any prejudice to the Debtor is negligible at best. During the February 20 hearing, the Court asked Debtor's counsel whether the Debtor had "incurred any expenses to date other than opposing the current motion before the Court?" Debtor's counsel suggested the Debtor incurred costs related to opposing the Motion to Reopen, calls with insurance counsel, the impact on the Debtor's insurability, and the related time and expense. The Court does not find these to be substantial barriers to the Debtor, and courts often hold that allowing the commencement or continuation of lawsuits to determine a debtor's liability to pursue insurance "does not inequitably burden the debtor."[10] The Debtor previously consented to allowing virtually identical litigation to proceed in North Carolina, and the Debtor participated in the Tennessee litigation for nearly a year and a half without raising the Plan injunction as an issue. While the venue of the litigation may have changed, the Court perceives no substantial change in any potential prejudice

---

[8] *Id.* (quoting *In re Tarrer*, 273 B.R. at 732).

[9] *Id.* (quoting *In re Phillips*, 288 B.R. 585, 587 (Bankr. M.D. Ga. 2002)).

[10] *In re Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993).

8

to the Debtor in allowing litigation to proceed in Tennessee versus North Carolina. And courts routinely hold that a debtor is not prejudiced solely by the administrative expenses related to defending itself.[11] Further undercutting the Debtor's argument, the Eleventh Circuit has noted that the Bankruptcy Code's purpose "is to protect the debtor and not to shield third parties such as insurers who may be liable on behalf of the debtor."[12]

In contrast, the Court finds Balfour Beatty would suffer substantial prejudice if not allowed to pursue the litigation to conclusion. Balfour Beatty stands to recover nothing under the Debtor's Plan on account of its unliquidated claim. Allowing Balfour Beatty to continue against the Debtor's insurer, to the extent any insurance coverage exists, gives Balfour Beatty at least an opportunity to collect upon a claim it has been pursuing, in various forums, for nearly five years. If the Court denies Balfour Beatty relief, it stands to recover nothing on its claims.

The Court also finds no substantial benefit or harm to other creditors. Creditors will not be impacted as Balfour Beatty will receive no distribution as a creditor in this bankruptcy case that would diminish any distribution to other creditors. Balfour Beatty's counsel acknowledged as much at the February 20 hearing. Moreover, to the extent insurance is ultimately determined to be

---

[11] *See In re Harris*, 85 B.R. 858 (Bankr. D. Colo. 1988) ("While the cost of defending in a civil action has been given serious consideration by bankruptcy courts, no case has found the cost of defending, by itself, to be 'great prejudice' . . . ."); *Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.)*, 883 F.2d 970, 975 (11th Cir. 1989); *Stoneking v. Histed (In re Stoneking)*, 222 B.R. 650, 656 (Bankr. M.D. Fla. 1998).

[12] *In re Jet Fla. Sys.*, 883 F.2d at 975 (first citing *Wilkinson v. Vigilant Ins. Co.*, 224 S.E.2d 167, 168 (Ga. 1976); and then *West v. White (In re White)*, 73 B.R. 983 (Bankr. D.D.C. 1987)).

9

unavailable, Balfour Beatty cannot collect against the Debtor any amounts determined to be owed as collection against the Debtor is now prohibited by the Plan injunction and would be prohibited by any discharge injunction that may be entered. On balance, the Court concludes the three factors weigh in favor of reopening the bankruptcy case.

The Court likewise concludes, despite the Debtor's arguments to the contrary, that reopening the case is not an exercise in futility. The Debtor asserts that "[e]ven if this Court should reopen the case and lift the stay to proceed with the fixing of the claim, the liquidation of any claim in the Tennessee Case against AP Framing would take more than a year to obtain." (Doc. No. 209, ¶ 32). Given that timing, the Debtor argues reopening is an exercise in futility because "it is virtually certain that the fixing of such amount would occur after the last payment is due under the plan." *Id.* The Debtor's futility arguments miss the mark. Balfour Beatty is not seeking relief to liquidate its claim for purposes of receiving distributions under the Debtor's Plan. Instead, it seeks relief for purposes of liquidating its claim to recover against any applicable insurance. In response, the Debtor argues that "there may well be no insurance policy against which Balfour Beatty could seek payment." *Id.* at ¶ 30. That argument fares no better. It may ultimately prove true that Balfour Beatty cannot collect against any of the Debtor's insurance policies, but that is a determination more appropriately made in the Tennessee action or by some other court. Balfour Beatty should not be precluded from seeking recovery against the Debtor's insurance carriers

10

when the Debtor is not overly burdened by such efforts.

A slightly better futility argument, though one not clearly raised by the Debtor, is that Balfour Beatty cannot seek modification under § 1127(b) because the Plan is substantially consummated. In other cases, debtors opposing a motion to reopen and modify a plan injunction occasionally raise the specter of § 1127(b)'s prohibition on modification after a plan has been substantially consummated.[13] The Court generously reads the Debtor's argument that "it is now nearly four years since the plan of reorganization was confirmed" as raising a § 1127(b) argument. The relevant portion of § 1127(b) provides:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.

When seeking to reopen a case after a plan has been substantially consummated, a movant must show "[its] suit does not rise to the level of a 'modification' that would be prohibited by § 1127(b)."[14]

The court in *Romero v. Border Steel Rolling* addressed the propriety of a party

---

[13] *See, e.g., In re HNRC Dissolution Co.*, Case No. 02-14261, 2005 WL 3841865, at *2 (Bankr. E.D. Ky. July 29, 2005) ("[Debtor] argues that Bankruptcy Code section 1127(b) only allows post-confirmation plan modification prior to 'substantial consummation' of the plan, and since the Plans herein are substantially consummated, the Movants cannot meet the section 1127(b) standard for plan modification."); *In re Superior Offshore Int'l, Inc.*, Case No. 08-32590, 2011 WL 4972121, at *2 (Bankr. S.D. Tex. Oct. 19, 2011) ("[Debtor's] Plan Agent argues that the modification of the plan injunction is not allowed under § 1127(b) of the Bankruptcy Code.").

[14] *Romero v. Border Steel Rolling*, 54 F. App'x 591 (5th Cir. 2002); *see also In re Superior*, 2011 WL 4972121, at *3.

11

requesting modification of a plan injunction under similar facts.[15] In *Romero*, a plaintiff moved to reopen a bankruptcy case and sought modification of the plan injunction to continue a separate suit against the debtor. The plaintiff argued that modifying the injunction to allow him to continue his suit did not violate § 1127(b), and the Fifth Circuit agreed as plaintiff sought "only the ability to pursue [debtor's] insurers" and "the bankruptcy court originally lifted the stay to permit" plaintiff's suit to proceed.[16] Both relevant facts identified by the Fifth Circuit in *Romero* are present here: Balfour Beatty seeks only the ability to pursue the Debtor's insurers, and the Court entered the Consent Order lifting the stay to permit the Demonbreun Case to proceed in March of 2022 (Doc. No. 193). Therefore, the Court finds that modifying the Plan injunction for the sole purpose of allowing Balfour Beatty to continue its suit does not rise to the level of a modification prohibited by § 1127(b).

Of the arguments raised by the Debtor in opposition to the Motion to Reopen, the Court initially was most troubled by Balfour Beatty's failure to obtain relief from the Plan injunction prior to commencing the Tennessee litigation. All told, neither party was particularly timely in raising the implications of this bankruptcy case in the Tennessee actions, and the Court does not believe the Motion to Reopen should be denied on account of Balfour Beatty's delay in requesting relief. That conclusion is made even more evident given that a number of judges in this Court have questioned

---

[15] 54 F. App'x at 591.

[16] *Id.*

12

the necessity of such relief, a point neither party raised. For instance, in *In re Doar*, two plaintiffs sought to reopen a case in order to proceed nominally against a debtor to establish liability and seek recovery from the debtor's insurer.[17] The court reopened the case and held that § 524[18] did not prohibit the plaintiffs from pursuing their claim against the debtor's insurer and including "debtor as a nominal defendant in the state court action."[19] Simultaneously, the court remarked that it did "not believe that the reopening of the case is necessary" as pursuing a debtor nominally is "not barred by § 524 of the Bankruptcy Code, thereby obviating the need to 'vacate' or 'modify' the discharge injunction."[20] Similarly, in *In re Hayden*, the court lamented an inconsistency in the caselaw as to whether actual modification of the discharge injunction is a prerequisite to the continuation of an action against a debtor as a nominal defendant.[21] In both *Doar* and *Hayden*, the courts reopened the case and granted the movant's request to modify the discharge injunction "out of an abundance of caution."[22] For similar reasons, the Court finds reopening this case prudent. Having concluded that reopening of the case is appropriate, the Court turns to

---

[17] *In re Doar*, 234 B.R. 203 (Bankr. N.D. Ga. 1999) (Kahn, J.).

[18] Of course, Balfour Beatty is not seeking to modify a discharge injunction under § 524, however, as explained in more detail below, modification of a plan injunction operates similarly.

[19] *In re Doar*, 234 B.R. at 206.

[20] *Id.* at 207 (citing *Patronite v. Beeney (In re Beeney)*, 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992)).

[21] *In re Hayden*, 477 B.R. 260, 264-65 (Bankr. N.D. Ga. 2012) (Drake, J.) (citing *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195 (7th Cir. 1993)).

[22] *In re Doar*, 234 B.R. at 207 ("[O]ut of an abundance of caution, the Court will order that the case be reopened for the purposes of considering the motion and the response thereto . . . ."); *In re Hayden*, 477 B.R. at 266 ("While it is not clear that modification of the discharge injunction is required, out of an abundance of caution, the Court will grant the relief requested.").

whether the Plan injunction in this case should be modified.

### 2. Modification of Plan Injunction

As it stands, the Debtor has not received the benefit of a discharge injunction. Instead, because the Debtor confirmed a non-consensual plan under 11 U.S.C. § 1191(b), the Debtor's Plan injunction controls and prevents the continuation or commencement of actions against it. Notably, the language of the Debtor's Plan injunction bears a stark resemblance to § 524(a)(2):

> The Confirmation Order shall act as a permanent injunction against any Person: (a) commencing or continuing any action, (b) employing any process, or (c) any [act] to collect, offset, or recover any Claim except as provided for in this Plan against: (1) Debtor, or (2) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction. Such injunction shall remain in effect as to each creditor for so long as payments to such creditor are provided for by the Plan.

(Doc. No. 73, Art. 11, ¶ 5). Additionally, the Confirmation Order, incorporated by reference in the Plan injunction, contains similar protections:

> [A]ll persons are permanently enjoined from commencing or continuing any action, employing any process, or acting to collect, offset, or recover any claim or cause of action that such person may have had at the date of the filing of Debtor's Chapter 11 petition against Debtor or its property except as provided for in the Plan.

(Doc. No. 142).

The text of the Plan injunction appears to prohibit Balfour Beatty from continuing the litigation in Tennessee.[23] Balfour Beatty's request to "continue with ongoing civil litigation" thus requires the Court to consider modification of the Plan

---

[23] *But see In re Doar*, 234 B.R. at 207; *In re Hayden*, 477 B.R. at 266.

injunction. Because no statutory guidance instructs on the appropriate standards for modifying a plan injunction, courts addressing such requests analogize to either modifying the automatic stay or modifying a discharge injunction. Some courts treat a request to modify a plan injunction like a motion for relief from the automatic stay.[24] Other courts treat a motion to modify a plan injunction as if it were a request to modify the discharge injunction.[25]

The Court finds the second line of cases treating a plan injunction modification akin to a discharge injunction modification more appropriate. Although the Eleventh Circuit has not ruled on this precise issue, in *Jet Fla. Sys.* it considered a request to modify a discharge injunction in a similar scenario. There, as here, a plaintiff sought to "proceed against the debtor to establish the debtor's liability in order to recover from the debtor's insurer."[26] The Eleventh Circuit held that "a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable."[27] Although the Eleventh Circuit did not make this conclusion in the context of a plan injunction, its holding applies equally here. The Debtor's Plan injunction is clearly modeled on the language of § 524 and

---

[24] *See, e.g., In re Ditech Holding Corp.*, Case No. 19-10412 (JLG), 2022 WL 16952443 (Bankr. S.D.N.Y. Nov. 15, 2022) (applying *In re Sonnax Indus.* factors to determine whether cause exists to grant relief from plan injunction); *Moreno-Cuevas v. Town Sports Int'l, LLC (In re Town Sports Int'l)*, Case No. 20-12168 (CTG), AP 23-472 (MN), 2023 WL 8827193 (Bankr. D. Del. Dec. 21, 2023) (applying three-factor lift stay analysis).

[25] *See, e.g., Romero*, 54 F. App'x 591; *In re Superior*, 2011 WL 4972121; *In re HNRC*, 2005 WL 3841865.

[26] *In re Jet Fla. Sys., Inc.*, 883 F.2d at 973.

[27] *Id.* at 976.

designed to create an injunction that operates similarly until it receives its discharge. And there can be no argument that the Plan injunction is broader than any discharge injunction ultimately to be received.

While the Court is not convinced that modification of the Plan injunction is required for Balfour Beatty to name the Debtor nominally in pursuit of insurance proceeds, *see supra* pp. 12-13, out of an abundance of caution, the Court will undertake the modification analysis. Courts typically grant modification of a discharge injunction if: (1) "naming the debtor as a nominal defendant is 'necessary to establish liability against a third party'"; (2) "the debtor bears none of the expense of the defense"; and (3) "the plaintiff may not collect any judgment from the debtor personally or from his assets."[28] Each of these requirements is met here.

The Debtor is a necessary party to the Tennessee litigation. Without the Debtor listed as a nominal party in the Tennessee litigation, Balfour Beatty has no ability to pursue the Debtor's insurers.[29] The Debtor does not seriously challenge that conclusion. It in fact recognized as much in the Consent Order allowing litigation against the Debtor to go forward.

Nor does the Court find any expense the Debtor may incur to bar modification of the Plan injunction here. The Court previously addressed the Debtor's expense

---

[28] *In re Hayden*, 47 B.R. at 265 (quoting *In re Catania*, 94 B.R. 250, 253 (Bankr. D. Mass. 1989)).

[29] *In re Podmostka*, 527 B.R. 51, 55 (Bankr. D. Mass. 2015); *see also In re Ruebush*, Case No. 06-CV-0344, 2006 WL 1635696, at *2 (W.D. La. June 8, 2006) ("Most frequently the debtor is deemed 'necessary' when the creditor is suing a debtor solely as a prerequisite to recovery against the debtor's insurer . . . .").

16

burden arguments in determining whether the case should be reopened, *supra* pp. 8-9. And while the Eleventh Circuit has acknowledged that suits by plaintiffs proceeding nominally against discharged debtors "could possibly have the effect of draining funds that would more properly be used in the revitalization of the reorganized corporation," the court at the same time found "the possibility that the debtor will be responsible to pay any amount associated with defending [such an] action so remote that the fresh-start policy is simply not defeated" even when it could not determine "whether the bankrupt *or* the insurance company will pay the cost of the litigation."[30] The Court simply does not have sufficient evidence before it to determine whether the Debtor or the Debtor's insurer will pay for the Tennessee litigation. However, given that the Debtor and Balfour Beatty have been litigating for years, the Court expects the Debtor would have offered proof of substantial expenses had it incurred any. As there is no evidence, or even an assertion by counsel, to suggest the Debtor bears the cost of defending the Tennessee litigation, the Court is satisfied that the Debtor will not bear substantial costs related to the Tennessee litigation.

On the final factor, the Court finds that Balfour Beatty is unable to collect any judgment from the Debtor personally or from its assets. At the February 20 hearing, counsel for Balfour Beatty made it abundantly clear that it did not seek to collect from the Debtor. Even if Balfour Beatty wanted to collect against assets of the Debtor

---

[30] *In re Jet Fla. Sys.*, 883 F.2d at 976 (emphasis in original).

at this point, collection is prevented by the Plan injunction currently and any eventual discharge injunction that may be entered. In light of the above, the Court finds cause exists to reopen the case under 11 U.S.C. § 350(b) and Bankruptcy Rule 5010, and the Court finds sufficient cause to modify the Plan injunction to allow the litigation in Tennessee to proceed nominally against the Debtor.

Accordingly,

**IT IS ORDERED** that the Motion to Reopen is **GRANTED**. The Debtor's case is hereby reopened pursuant to 11 U.S.C. § 350(b) and Bankruptcy Rule 5010.

**IT IS FURTHER ORDERED** that the Plan injunction is modified to permit Balfour Beatty to continue the litigation in Tennessee for purposes of liquidating its claim and recovering any damages from any available insurance. The Debtor's Plan injunction remains in full force and effect with respect to collection of any judgment against the Debtor or any asset of the Debtor other than insurance.

The Clerk's Office is directed to serve a copy of this Order upon the Debtor, Balfour Beatty, and the former Subchapter V Trustee.

**END OF DOCUMENT**